## Illinois Central Railroad Company v. Lee F. Orr.

1. NEGLIGENCE—*Unsafe Condition of Cars—Brakeman.*—It is negligence in a railroad company to expose a brakeman to a danger which he neither knew nor had reason to anticipate, but not if the brakeman has actual notice, or such notice as the law implies from the fact that it is his duty to learn the condition of the cars, and he had ample opportunity to do so before being injured.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Kankakee County; the Hon. CHARLES R. STARR, Judge, presiding. Heard in this court at the December term, 1894. Affirmed. Opinion filed May 28, 1895.

WHEELER & HUNTER, attorneys for appellant.

M. B. & F. S. LOOMIS and J. N. ORR, attorneys for appellee.

MR. JUSTICE CARTWRIGHT DELIVERED THE OPINION OF THE COURT.

Appellee was a brakeman in the employ of appellant, and on May 8, 1893, while on duty with a train of freight cars in bad order, which were being taken from Fordham yards

at Chicago to Mile 37 at Monee, Illinois, was injured while attempting to uncouple the train at Monee, by his arm being caught between the deadwoods of the cars, on account of the absence of a drawbar from one of the cars. The cars had been fastened together by means of a chain, which permitted the deadwoods to come together. Appellee brought this suit to recover from appellant damages for his injury, charging appellant with knowledge of the defective and dangerous condition of the car and alleging that he had no notice or knowledge of such condition, and was injured while in the exercise of all due care on his part. There was a verdict for $1,000, and judgment was entered for that amount.

It is contended that the verdict was wrong, because the risk was an ordinary one incident to the business, and plaintiff had notice of the condition of the car, or would have had if he had attended to his duties, and did not exercise ordinary care in looking when he went between the cars to ascertain the condition of the coupling. Plaintiff had been in the employ of defendant since March 22, 1893, and during that six weeks had acquired practically all the knowledge and experience that he had in that business. During that time he worked on a freight train between Chicago and Champaign, and had never been on a train made up of damaged and defective cars. The particular purpose of sending these cars to Mile 37 was to store them there. They were unfit for use in their existing condition, and cars chained together without drawbars to keep them apart were dangerous for brakemen to go between. There were forty-seven of the defective cars which made up the train, and there is nothing in the evidence to indicate that the running of that sort of a collection over the road had ever taken place before, or that the risk connected with it was an incident of the general employment of a brakeman in the ordinary service of defendant. Ten or twelve of the cars had lost drawbars, probably in the operation of trains on the road, and it is evident that such accidents would be liable to occur in such operation and to come under the notice of

brakemen.   In such cases a brakeman would necessarily know of the mishap by the separation of the train, and if the cars should be chained together must look out for dangers arising from that fact.   But in the absence of notice, express or implied, it is not to be presumed that trains are made up and sent out on the road with cars in that condition, and while plaintiff will be held to have understood the ordinary hazards of his employment and to have voluntarily assumed them, we do not think that the evidence showed the risk in this case to have been of that class.

The important question is whether plaintiff had notice of the character of the train, and that it was made up of defective cars.   There was no wrong in taking the cars to a suitable place for storage, and if defendant was guilty of any wrong it was in exposing plaintiff to a danger which he neither knew nor had reason to anticipate.   If he had actual notice, or such notice as the law would imply from the fact that it was his duty to learn the condition of the cars, and the fact that he had ample opportunity to do so before being injured, there would be no such wrong.   It is contended on one hand that he had notice, both express and implied, and on the other hand that he had neither.   Plaintiff had come in from a regular trip on the road and slept in the caboose of his train at Fordham yards.   He was notified about 9:30 in the forenoon that the crew was ordered out for a trip, and he cleaned the lamps and worked about the caboose for some time making preparations.   He was head brakeman and his place was on the front of the train next the engine. There was also a rear brakeman whose place was at the rear end of the train.   The switchmen in the yard were making up trains with switch engines, and these brakemen had nothing to do with that.   Their testimony was that they knew nothing about the train they were to take out; that they did not examine it, and that it was not a part of their duties to do so.   Plaintiff claimed to have worked in the caboose until they took it out, when he went up to get the engine which it was his duty to couple on.   The conductor thought that plaintiff was told of the character of the train,

and that he must have seen what kind of cars it was composed of at the yards, but could not recollect definitely that he was told. After the train started plaintiff rode on the front car next the engine, and assisted in making five stops by setting brakes. At the second stop, which was at Kensington, a car six or eight lengths from the engine got off the track and plaintiff assisted in getting it back. The coupling where he was hurt was a few lengths back of the car that was off. When the train reached Monee, and had stood on a street crossing more than ten minutes, plaintiff went back to open the train and let traffic through. He went between two cars for that purpose, but could not uncouple them without some slack which had all been taken up so that the coupling was tight. He stepped out and gave the signal for the engineer to back a little and slacken the coupling, which was done. He testified that he then noticed that to uncouple there would not clear the road for teams, and thereupon he went in hastily between the next two cars and was caught as the engineer backed the cars together. The evidence was that there were no cards or chalk marks on the cars to indicate bad order, but that some doors were gone, and there was a general appearance of disorder about the train, and that during the run, which was twenty-four miles, there was more swaying and bumping than there would be about a train with all drawbars in order.

We think that the evidence fails to establish that there was notice to plaintiff at the yards, or a duty of inspection there, but there is much ground for the claim that in handling the train during the trip, going over the front part of it setting brakes, and passing along it when the car was off, and in going to make the opening at the street crossing, plaintiff was afforded ample opportunity to become acquainted with its condition, and was, therefore, not without notice of the increased hazard.

This question of fact was, however, submitted to the jury under very full instructions prepared by defendant's counsel, placing the rules for its determination in the most favorable light for defendant, and we are not prepared to say that

the evidence necessitated a different finding. There was no coupling or uncoupling of cars on the road to call special attention to the couplings. The one attempted at the time of the injury was the first, and if plaintiff was without notice of the danger, the evidence would justify a finding that he exercised ordinary care at that time. The occurrence was momentary, and an unexpected condition would almost instantly result in the injury as he went in and the cars came together.

The first instruction given at the request of plaintiff was as follows: "If the jury believe from the evidence that the plaintiff has made out his case as set out in either count of the declaration, they should find for the plaintiff." This instruction is criticised on account of saying "made out his case," instead of making it a condition that he had proved his case by the evidence; but if there was any chance of the jury mistaking its meaning, the danger was obviated by the first instruction given for defendant, which stated that plaintiff could only maintain the suit by proving the allegations of some one count of the declaration by a preponderance of all the evidence in the case. The third instruction for plaintiff is also complained of as too broad under the facts, but in view of all the instructions we see no valid objection to it.

The affidavit of a deputy sheriff was filed charging a juror with misconduct by holding a conversation with a brother of plaintiff after the retirement of the jury. Both parties to the alleged conversation denied it by their affidavits, and the charge seems to have been met and overcome.

The judgment will be affirmed.